IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MYRAINNE Z. ROA-MENDEZ

Plaintiff

vs

CONSEJO ESTATAL SOBRE
DEFICIENCIAS EN EL DESARROLLO
(CEDD); LUIS FORTUÑO-BURSET, in his
personal capacity and as Governor of the
Commonwealth of Puerto Rico; DAVID
CRUZ-VELEZ, in his individual and official
capacity as a Member of the Board of
Directors of CEDD; ARTURO DELIZ-VELEZ,
in his individual and official capacity as a
Member of the Board of Directors of CEDD;
PUERTO RICO PLANNING BOARD; RUBEN
FLORES-MARZAN, in his individual and
official capacity as the President of the
Puerto Rico Planning Board and as a
representative of the Planning Board in the
Board of Directors of CEDD; JUAN
BARNES-LLINAS, in his individual and official
capacity as a Member of the Board of
Directors of CEDD; EDISON
NEGRON-OCASIO, in his individual and
official capacity as a Member of the Board of
Directors of CEDD; MORAYMA
NIEVES-RIVERA, in his individual and official
capacity as a Member of the Board of
Directors of CEDD; JOSE N.
PIMENTEL-VAZQUEZ, in his individual and
official capacity as a Member of the Board of
Directors of CEDD; GLADYS W.
QUIÑONEZ-CARABALLO, in his individual
and official capacity as a Member of the
Board of Directors of CEDD; JAVIER
SOTO-AROCHO, in his individual and official
capacity as a Member of the Board of
Directors of CEDD; NYDIA A.
COLON-ZAYAS, in her individual and official
capacity as a representative of the
Administration of Vocational Rehabilitation;
MIGUEL NEGRON-RIVERA, in his individual
and official capacity as a representative of
the Medicaid Program of the Department of
Health; EFRAIN FIGUEROA-DIAZ, in his
individual and official capacity as a
representative of the Department of Labor
and Human Resources; MIGUEL
HERNANDEZ-VIVONI, in his individual and
official capacity as a representative of the
Department of Housing;

CIVIL 11-1989CCC

CIVIL 11-1989CCC                                    2

CONCEPCION QUIÑONES-DE LONGO, in
her individual and official capacity as a
representative of Department of Health;
ANGEL TORO, in his individual and official
capacity as a representative of the
Department of Sports and Recreation; and
JESÚS M. RIVERA-SANCHEZ, in his
individual and official capacity as a
representative of the Department of
Education

Defendants

### OPINION AND ORDER

Before the Court are defendants Consejo Estatal Sobre Deficiencias en el
Desarrollo or Puerto Rico Council on Developmental Disabilities ("Consejo Estatal sobre
Deficiencias en el Desarrollo," hereinafter "CEDD"), Puerto Rico Planing Board (PRPB),
Governor Luis Fortuño-Burset (in his official capacity), David Cruz-Vélez, Arturo Deliz-Vélez,
Rubén Flores-Marzán, Juan Barnes-Llinas, Edison Negrón-Ocasio, Morayma Nieves-Rivera,
José N. Pimentel-Vázquez, Javier Soto-Arocho, Nydia A. Colón-Zayas, Miguel
Negrón-Rivera, Efraín Figueroa-Díaz, Miguel Hernández-Vivoni, Concepción
Quiñones-de Longo, Angel Toro, and Jesús M. Rivera-Sánchez' (hereinafter "defendants")[1]
Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on February 24,
2012 (**docket entry 34**), plaintiff Myrainne Z. Roa-Méndez' (hereinafter "plaintiff") Opposition
filed on March 23, 2012 (docket entry 40), defendants' Reply to Opposition filed on
March 27, 2012 (docket entry 41) and plaintiff's Sur-Reply filed on April 3, 2012 (docket
entry 42).

This is a 42 U.S.C. § 1983 action brought by plaintiff Myrainne Z. Roa-Méndez,
former Executive Director of the CEDD, alleging she was removed from her position

---

[1]All movants except Honorable Luis Fortuño-Burset appear before the Court in both
their official and personal capacities.

because of her political affiliation.  Plaintiff alleges as causes of action:  (1) that her dismissal violates the Developmental Disabilities Assistance and Bill of Rights Act of 2000; (2) political discrimination pursuant to the First Amendment by the Puerto Rico Planning Board and its President; (3) political discrimination pursuant to the First Amendment, deprivation of property interest without due process of law pursuant to the Fifth Amendment and Fourteenth Amendment, and the denial of equal protection pursuant to the Fourteenth Amendment by the CEDD, governor Luis Fortuño-Burset, the members of the Board of Directors of the CEDD and representatives of different agencies within the Board of Directors of the CEDD.  In addition, plaintiff asserts in the complaint that the Court has supplemental jurisdiction over their Commonwealth law claims.[2]

## I.      RULE 12(B)(6) MOTION TO DISMISS STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., citing Twombly, 550 U.S. at 555.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950.  In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common

---

[2]Plaintiff brings claims pursuant to "Sections 1, 4, 6, and 7 of Article II of the Constitution of Puerto Rico and the Public Service Personnel laws of Puerto Rico: Law No. 131 of May 13, 1943, P.R. Laws Ann., Tit. 1, Sections 13-19; and Articles 1802 and 1803 of the Civil Code, Sections 5141-5142 of Title 31.

CIVIL 11-1989CCC                                4

sense.  Id. at 1949-50.  In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief.  Iqbal,129 S. Ct. at 1950.

## II.   LEGAL ANALYSIS

Defendants' Motion to Dismiss seeks dismissal with prejudice on several grounds: (1) plaintiff has no private cause of action under the Developmental Disabilities Assistance and Bill of Rights Act of 2000; (2) the complaint fails to state a cause of action of political discrimination; (3) Eleventh Amendment immunity bars recovery against the individual defendants in their official capacities; (4) plaintiff has not stated a cause of action for violation of her Fifth or Fourteenth Amendments rights; (5) defendants are entitled to qualified immunity; and (6) supplemental claims under local law should be dismissed.  We first address movants' Eleventh Amendment argument in relation to movants as official capacity defendants. Second, the Court will discuss defendants' arguments regarding plaintiff's cause of action under the Developmental Disabilities Assistance and Bill of Rights Act of 2000.  Third, the Court will discuss defendants' arguments regarding plaintiff's section 1983 claim and the corresponding constitutional claims.  Finally, the Court will address defendants' arguments regarding qualified immunity and supplemental jurisdiction.

### A.      The Eleventh Amendment

Defendants contend that plaintiff's claims against defendants in their official capacity are barred by the Eleventh Amendment.  As has been repeatedly held, and reiterated in Vaquerías Tres Monjitas Inc. v. Irrizarry, 587 F.3d 464, 477-78 (1st Cir. 2009), "[w]hile a State may not be sued directly absent its own consent, the Ex Parte Young doctrine permits suits to proceed against State officers in their official capacities to compel them to comply with federal law . . . such suits, however, may only seek prospective injunctive or declaratory relief; they many not seek retroactive monetary damages or equitable restitution" for these would "run afoul of the Eleventh Amendment."  In Guillemard-Ginorio v. Contreras-Gómez,

CIVIL 11-1989CCC                                      5

585 F.3d 508, 530 (1st Cir. 2009), the Court said that "the Eleventh Amendment does not bar federal suits challenging state action under both state and federal law if the relief sought is not of the kind barred by the Eleventh Amendment- as is true of damages to be paid out of the official's pockets."  It distinguished between official capacity and individual capacity suits based on "the capacity in which the State officer is sued."  Id.  Therefore, suits against State officers in their official capacity in which the relief sought is prospective declaratory or injunctive relief fall under the Ex Parte Young doctrine as an exception to the Eleventh Amendment immunity.  In this case plaintiff is seeking injunctive relief against state officers in their official capacity, therefore, the Eleventh Amendment is no bar.  The Court also finds that the claims against defendants in their official capacity are understood to be limited exclusively to equitable relief and that the claims for monetary damages are allowed only as to defendants in their personal capacities.

Defendants Motion to Dismiss does not seek Eleventh Amendment immunity as to the PRPB nor the CEDD.  However, the Eleventh Amendment bars recovery of damages in a federal court against the Commonwealth of Puerto Rico.  Culebras Enterprises Corp. v. Rivera-Ríos, 813 F.2d 506, 516 (1st Cir. 1987).  This immunity extends to governmental instrumentalities that are an arm or "alter ego" of the state.  Pennhurst v. Halderman, 465 U.S. 89, 100 (1999).  It is settled law that the Puerto Rico Planning Board is an instrumentality of the Commonwealth of Puerto Rico and as such suits against it are barred by the Eleventh Amendment.  Trans Am Recovery Serv. v P.R. Maritime Shipping, 820 F. Supp. 38 (D. Puerto Rico 1993).  Martínez v. Junta de Planificación de Puerto Rico, 736 F. Supp. 413 (D. Puerto Rico 1990).  As to the CEDD, the law that creates the CEDD demonstrates that the CEDD is also an instrumentality of the Commonwealth of Puerto Rico and thus, covered by the Eleventh Amendment immunity.  The CEDD is the designated state agency created by the Governor's Executive Order OE-1997-19 of May, 1997 as amended by OE 2002-41 of August 15, 2002 pursuant to the Developmental Disabilities

CIVIL 11-1989CCC                                6

Assistance and Rights Act Amendments of 1994 as amended by P.L. 106-402 on October

30, 2000.  The purpose of the Developmental Disabilities Assistance and Bill of Rights Act

42 U.S.C. § 15001 et seq., is specifically stated in §15001(b), which reads:

> The purpose of this subchapter is to assure that individuals with developmental disabilities and their families participate in the design of and have access to needed community services, individualized supports, and other forms of assistance that promote self-determination, independence, productivity, and integration and inclusion in all facets of community life, through culturally competent programs authorized under this subchapter, including specifically—
>
> (1) State Councils on Developmental Disabilities in each State to engage in advocacy, capacity building, and systemic change activities . . .

The Act further states in § 15025(a) and § 15025(c) (4) and (5):

> Each state that receives assistance under this part shall establish and maintain a Council to undertake advocacy, capacity building, and systemic change activities (consistent with subsections (b) and (c) of section 15001 of this title) that contribute to a coordinated, consumer- and family-centered, consumer- and family-directed, comprehensive system of community services, individualized supports, and other forms of assistance that contribute to the achievement of the purpose of this part.  The Council shall have the authority to fulfill the responsibilities described in subsection (c) of this section.
>
> The Council shall develop the State plan and submit the State plan to the Secretary after consultation with the designated State agency under the State plan.  Such consultation shall be solely for the purposes of obtaining State assurances and ensuring consistency of the plan with State law.
>
> The Council shall implement the State plan by conducting and supporting advocacy, capacity building, and systemic change activities such as those described in subparagraphs (B) through (L).

Moreover, "[i]t is well established that neither a state nor a state agency is a 'person'

for purposes of § 1983 and thus, that § 1983 does not trump the state's immunity." Ryan

v. Illinois Department of Children and Family Services, 185 F.3d 751, 758 (7th Cir. 1999).

Therefore, the PRPB and the CEDD are covered by the Eleventh Amendment and the

claims against them fall.

CIVIL 11-1989CCC                              7

   **B.    Federal Statute Violation Claim**

   Plaintiff alleges as first cause of action that her termination as Executive Director of the Puerto Rico Council on Developmental Disabilities violated Federal Law because it was made in violation of the Developmental Disabilities Act of 1970, as amended by P.L. 103-230 on April 1994; the Developmental Disabilities Assistance and Bill of Rights Act of 1994, as amended by P.L. 106-402, and in contravention of the Memorandum of Assurances subscribed by the Commonwealth of Puerto Rico under subtitle B of the Developmental Disabilities and Bill of Rights Act. Plaintiff argues that when the Council removed her from her position as Executive Director for her political affiliation,  it violated §15025(9) of the Act  which reads as follows:

> STAFF HIRING AND SUPERVISION. - The Council shall, consistent with State law, recruit and hire a Director of Council, should the position of Director become vacant, and supervise and annually evaluate the Director.  The Director shall hire, supervise, and annually evaluate the staff of the Council. Council recruitment, hiring, and dismissal of the staff shall be conducted in a manner consistent with Federal and State nondiscrimination laws.  Dismissal of personnel shall be conducted in a manner consistent with State law and personnel policies.

   Defendants argue in their Motion to Dismiss that plaintiff does not have a private cause of action under the Development Disabilities Assistance and Bill of Rights Act of 2000 since the Act does not create any substantive right.

   As stated earlier, the purpose of the Developmental Disabilities Assistance and Bill of Rights Act  is "to assure that individuals with developmental disabilities and their families participate in the design of and have access to needed community services, individualized supports, and other forms of assistance that promote self-determination, independence, productivity, and integration and inclusion in all facets of community life, through culturally competent programs authorized."

   The Supreme Court has described the Developmental Disabilities Assistance and Bill of Rights Act of 2000 Act as "a federal-state grant program whereby the Federal Government provides financial assistance to participating States to aid them in creating

CIVIL 11-1989CCC                              8

programs to care for and treat the developmentally disabled.  Like other federal-state cooperative programs, the Act is voluntary and the States are given a choice of complying with the conditions set forth in the Act or forgoing the benefits of federal funding." Pennhurst State School and Hospital v. Halderman, 451 U.S. 1 (1981).  The Court states that "nothing suggests that Congress intended the Act to be something other than a typical funding statute.  Far from requiring the States to fund newly declared individual rights, the Act has a systematic focus, seeking to improve care to individuals by encouraging better planning, coordination, and demonstration projects." Id., at 22.  It added:

> Congress in recent years has enacted several laws designed to improve the way in which this Nation treats the mentally retarded.  The Developmentally Disabled Assistance and Bill of Rights Act is one such law.  It establishes a national policy to provide better care and treatment to the retarded and creates funding incentives to induce States to do so.  But the Act does no more than that.

The Developmental Disabilities Disabled Act is a funding statute with the purpose of of aiding the States in creating programs to care for and treat the developmentally disabled. Section 125(9) creates an obligation for the Council but it does not create a substantive right for plaintiff. Therefore, since plaintiff is not entitled to any cause of action under the Developmental Disabilities Assistance and Bill of Rights Act of 2000, the Court **GRANTS** defendants motion to dismiss the case on these grounds.

**C.  Claim of First Amendment Political Discrimination by the Puerto Rico Planning Board and its President**

Plaintiff alleges as second cause of action that the Puerto Rico Planning Board and his President Rubén Flores-Marzán, discriminated against her for her political affiliations and seeks compensation for the embarrassment caused to her.  She states that after  informing her that her position as Executive Director had been declared vacant, she was advised to report on the next working day to the Puerto Rico Planning Board, whereby she would be instructed as to her new position, duties, responsibilities, salary, etc.  Plaintiff avers that due to her political affiliations she was never informed of what was  her position within the Puerto

CIVIL 11-1989CCC                                    9

Rico Planing Board, nor she was advised as to what where her new duties, responsibilities and salary.

The Court has already established that the PRPB is covered by the Eleventh Amendment immunity.  Similarly, under the Eleventh Amendment, defendant Flores-Marzán, in his official capacity, is immune from suits for monetary damages.  As to this second cause of action against Mr. Flores-Marzán in his individual capacity, plaintiff's only allegations, found at paragraphs 43 and 44 state that almost four months after her dismissal as Executive Director of the CEDD, she had not been informed of what was her new position within the Puerto Rico Planning Board nor what where her new duties, responsibilities and salary.  These are insufficient factual allegations which do not allow us to draw the reasonable inference that Mr. Flores-Marzán deprived plaintiff of her constitutional rights under the First Amendment.  Therefore, plaintiff's second cause of action First Amendment Political Discrimination claim against the Puerto Rico Planning Board and its President Rubén Flores-Marzán is **DISMISSED**.

D.    **Claims of Political Discrimination, Deprivation of Property Interest without Due Process of Law, and the Denial of Equal Protection by the CEDD, by Governor Luis Fortuño-Burset, the CEDD, the Members of the Board of Directors of the CEDD and Representatives of Different Agencies within the Board of Directors of the CEDD**

Plaintiffs bring their claims for violation of their constitutional rights pursuant to Section 1983.  This disposition "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State [. . .].'"  Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982).  In order for a claim to be cognizable under Section 1983, a plaintiff must plead and prove three elements of the cause of action: (1) that the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected rights, privileges or immunities; and (3) that the defendants' alleged conduct was causally connected to the plaintiff's deprivation.   Gutiérrez–Rodríguez v. Cartagena,

CIVIL 11-1989CCC                              10

882 F.2d 553, 558 (1st Cir. 1989).   Furthermore, the Developmental Disabilities Act in §15025(9) states that "the Council, shall, consistent with State law, recruit and hire a Director of the Council, should the position of Director become vacant, and supervise and annually evaluate the Director.  The Director shall hire, supervise, and annually evaluate the staff of the Council.  Council recruitment, hiring, and dismissal of staff shall be conducted in a manner consistent with Federal and State nondiscrimination laws.  Dismissal of personnel shall be conducted in a manner consistent with State law and personnel policies."

The first element for a cause of action is satisfied in this case against defendants David Cruz-Vélez, Arturo Deliz-Vélez, Rubén Flores-Marzán, Juan Barnes-Llinas, Edison Negrón-Ocasio, Morayma Nieves-Rivera, José N. Pimentel-Vázquez, Javier Soto-Arocho, Nydia A. Colón-Zayas, Miguel Negrón-Rivera, Efraín Figueroa-Díaz, Miguel Hernández-Vivoni, Concepción Quiñones-de Longo, Angel Toro, and Jesús M. Rivera-Sánchez because plaintiff alleges that these fifteen (15) defendants are either members of the Board of Directors of the CEDD  Board or representatives within the Board of Directors of the CEDD and that they acted in their capacity as such to terminate plaintiff from her employment.  The second element shall be discussed at subsection 1., *infra*.  The third element –causal connection–, is also satisfied as to said fifteen (15) defendants, since plaintiff alleges that they all participated in the decision to terminate her.  It is not satisfied, however, as to defendant Luis Fortuño-Burset.  Because of his position as Governor of Puerto Rico, plaintiff makes an implicit assumption that he participated in the decision to terminate her employment.  There are, however, no factual allegations, such as specific interactions between defendant Fortuño and other defendants that tie him to the deprivation of the plaintiff's constitutional rights.  The allegation that he is the nominating authority in the government of Puerto Rico and that he nominated several of the Board members of the CEDD is a wholly generic allegation which does not allow us to draw the inference that Governor Fortuño-Burset had any personal involvement in the events that led to plaintiff's

dismissal or in the decision itself.  See Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570) ("To survive a motion to dismiss, a complaint must contain sufficient factually matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").  Plaintiff's assumption is, therefore, insufficient to sustain a Section 1983 claim against defendant Fortuño-Burset.  Having determined that the claim against defendant Fortuño-Burset does not meet the plausibility standard, all of plaintiff's 1983 claims against him are **DISMISSED**.

### 1.    *Political Discrimination*

The First Amendment right to freedom of speech protects non-policymaking public employees from adverse employment decisions based on political affiliation.  See Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000); see also Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Branti v. Finkel, 445 U.S. 507, 516 (1980); Elrod v. Burns, 427 U.S. 347, 354 (1976).  The Mount Healthy two-part burden-shifting framework for analyzing free speech claims is the method used to evaluate claims of political discrimination.  Padilla-García, 212 F.3d at 74; c.f., Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (applying the two part burden-shifting analysis to a free speech claim).  The plaintiff must first show, through direct or circumstantial evidence, that he/she engaged in constitutionally protected conduct and that political affiliation was a substantial or motivating factor behind the challenged employment action.  González-Blasini v. Family Dept., 377 F.3d 81, 85 (1st Cir. 2004); Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998).  "If [the plaintiff] does so, then the defendant is given the opportunity to  establish that  it would  have  taken  the  same action  regardless  of  the  plaintiff's  political beliefs–commonly referred to as the Mt. Healthy defense."  Padilla-García, 212 F.3d at 74.

To establish a *prima facie* case, the plaintiff must show, or (for the purposes of Rule 8(a)(2)) properly plead, that (1) the plaintiff and the defendant belong to opposing political affiliations, (2) the defendant has knowledge of the plaintiff's affiliation, (3) a

CIVIL 11-1989CCC                                12

challenged employment action occurred, and (4) political affiliation was a substantial or motivating factor behind the challenged employment action.   Martín-Vélez v. Rey-Hernández, 506 F.3d 32, 39 (1st Cir. 2007) (citing Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006).

In this case, plaintiff has alleged all four elements of the *prima facie* case: (1) the defendants are all New Progressive Party (NPP) members, while the plaintiff is a member of the Popular Democratic Party (PDP); (2) the defendants knew of the plaintiff's political affiliation to the PDP; (3) the plaintiff was terminated from her employment; and (4) the defendants terminated plaintiff because of her political affiliation.

The following are the paragraphs with the relevant allegations for purposes of the Court's analysis of the sufficiency of plaintiff's political discrimination claim. In paragraphs 1, 15, 16, 17, 20 and 21 of the complaint plaintiff alleges that she was the victim of an adverse employment action taken by the newly appointed members of the Board of Directors of the CEDD.  In paragraphs 17, 25 and 30 of the complaint , plaintiff specifically alleges that her political affiliation as member of the PDP, was a motivating factor for the adverse employment action.  Paragraphs 17 and 25 specifically claim:

> 17.   Plaintiff's dismissal as Executive Director of the CEDD was politically motivated, as the only reason provided by the members of the Board of Directors of CEDD to remove her from her position was that she did not share the mentality of the current political administration of the Commonwealth of Puerto Rico; under Governor Luis Fortuño of the New Progressive Party.  Said position was established at the meeting of the Board of the  CEDD by codefendant Rubén Flores-Marzán and supported by all of the newly appointed members of the Board which where named to the same by current Governor, Luis Fortuño.

> 25.   As previously mentioned, the only reason provided by the members of the CEDD Board to terminate plaintiff's job was because the defendants knew that she belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

In paragraphs 1, 4-21, 11, 15, 16, 17, 25, 30, 31, 32, 33, 37 and 45 of the complaint plaintiff states that she is a member of the PDP while defendants are members of the NPP.

CIVIL 11-1989CCC                    13

At paragraphs 11, 17, 25, 30, 37, plaintiff avers that defendants had knowledge of her affiliation with the PDP.

Having carefully considered plaintiff's third cause of action and factual allegations of political discrimination, the Court concludes that plaintiff has alleged sufficient facts to withstand dismissal on the pleadings as to defendants David Cruz-Vélez, Arturo Deliz-Vélez, Rubén Flores-Marzán, Juan Barnes-Llanas, Edison Negrón-Ocasio, Morayma Nieves-Rivera, José N. Pimentel-Vázquez, Javier Soto-Arocho, Nydia A. Colón-Zayas, Miguel Negrón-Rivera, Efraín Figueroa-Díaz, Miguel Hernández-Vivoni, Concepción Quiñones-de Longo, Angel Toro, and Jesús M. Rivera-Sánchez' petition. Therefore, the Court **DENIES** defendants' motion to dismiss the case as to these defendants but **GRANTS** it as to defendant Luis Fortuño-Burset.

### 2.    *Equal Protection Clause Claim*

With regard to plaintiff's claim under the Equal Protection Clause, we note that it was cursorily alleged in the complaint along with of her First Amendment Claim. Being merely a restatement of plaintiff's First Amendment claim, it is **DISMISSED**. Morales- Santiago v. Hernández-Pérez, 488 F.3d 465, 472 (1st Cir. 2007). See also Néstor Colón Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992) (declining to apply equal protection analysis in light of the overlap between plaintiffs' First Amendment and equal protection claims).

### 3.    *Due Process Claim*

Defendants also assert that plaintiff's due process claims should be dismissed. A state may not discharge a public employee who possesses a property interest in continued employment without due process of law. Colón-Santiago v. Rosario, 438 F.3d 101, 108 (1st Cir. 2006). To state a claim under a procedural due process theory, plaintiffs must plausibly plead that they were deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process. Maymí

v. Puerto Rico Ports Authority, 515 F.3d 20 (1st Cir. 2008). Plaintiff has made factual allegations that support her claim that she has a constitutionally protected right to her position as Executive Director and was deprived of this right without due process of law. Therefore, defendants request for dismissal as to her due process claim is **DENIED**.

      **E.**    **Qualified Immunity**

As to the qualified immunity defense raised by defendants', "[t]he threshold inquiry [when determining whether an official is entitled to qualified immunity] is whether the plaintiff's allegations, if true, establish a constitutional violation." Siegert v. Gilley, 500 U.S. 226, 232 (1991). Plaintiff alleges in the complaint that each of the individual defendants participated in the decision to remove her from her position of Executive Director of the CEDD and/or allowed such removal to take place due to political discriminatory animus. Plaintiff's allegations assert a violation of her constitutionally protected right to hold her own political beliefs and choice of association, allow for the reasonable inference that her political association was a substantial or a motivating factor in the decision to terminate her and further establish that a reasonable person would have understood that her clearly established First Amendment rights would be violated by their actions. Therefore, because defendants are not entitled to qualified immunity; the Court **DENIES** defendants' motion to dismiss the case on these grounds.

      **F.**    **Supplemental State Law Claims**

As to the claim pursuant to Law. No. 131 of May 13, 1943, P.R. Laws Ann., Tit. 1, Sections 13-19, none of the allegations presented by plaintiff places her within the scope of the protection of this law and therefore, she fails to state a claim under this specific law. Finally, plaintiff's claim under Articles 1802 and 1803 of the Civil Code of Puerto Rico must be **DISMISSED**, given that the Puerto Rico Supreme Court has held that to the extent that a specific labor law covers the conduct for which plaintiff seeks damages, he is barred for using that same conduct under Article 1802. Santini-Rivera v. Serv. Air, Inc. 137 D.P.R. 1,4

CIVIL 11-1989CCC                                15

(1994).  Therefore, the Court **GRANTS** defendants' motion to dismiss as to the claims under Article 1802 of the Civil Code of Puerto Rico and Article II of the Constitution of Puerto Rico and the Law 131 claim.

## III.    CONCLUSION

In sum, and for the reasons stated, defendants' Motion to Dismiss (**docket entry 34**) is **GRANTED** as to: (1) plaintiff's claim under the Developmental Disabilities Assistance and Bill of Rights Act of 2000; (2) plaintiff's claims against defendants Puerto Rico Planning Board (PRPB),  Puerto Rico Council on Developmental Disabilities ("Consejo Estatal sobre Deficiencias en el Desarrollo" (CEDD), and defendant Luis Fortuño-Burset;(3) the equal protection and the state law claims against all defendants.  The Court also **DISMISSES** plaintiff's second cause of action based on her First Amendment political discrimination claim against the Puerto Rico Planning Board and its President Rubén Flores-Marzán. Accordingly, partial judgment will be entered **DISMISSING** those claims. Defendants' Motion to Dismiss is **DENIED**, however, as to plaintiff's political discrimination and due process claims against defendants David Cruz-Vélez, Arturo Deliz-Vélez, Rubén Flores-Marzán, Juan Barnes-Llinas, Edison Negrón-Ocasio, Morayma Nieves-Rivera, José N. Pimentel-Vázquez, Javier Soto-Arocho, Nydia A. Colón-Zayas, Miguel Negrón-Rivera, Efraín Figueroa-Díaz, Miguel Hernández-Vivoni, Concepción Quiñones-de Longo, Angel Toro, and Jesús M. Rivera-Sánchez.

SO ORDERED.

At San Juan, Puerto Rico, on September 13, 2012.

S/CARMEN CONSUELO CEREZO
United States District Judge